## AMERICAN GREENHOUSE MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20952.   Promulgated January 28, 1931.

*J. B. Grice, C. P. A.*, for the petitioner.
*Hartford Allen, Esq.*, for the respondent.

**OPINION.**

MATTHEWS: This case arises under section 240 (a) and (b) of the Revenue Act of 1918, which read as follows:

Sec. 240. (a) That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and Title III, and the taxes thereunder shall be computed and determined upon the basis of such return:
* * *

\*          \*          \*          \*          \*          \*          \*

(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or con-

trols through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

In the present case, Philip L. McKee was the moving spirit in both corporations and they were in effect a " one-man business," as he regarded them.   The complete control of all business and economic policy was in his hands.   On the facts no doubt can exist that he owned " substantially all the stock " of the petitioner during 1919, since he held of record 150 of the total 155 shares.

Upon the question of McKee's stock ownership in the Pana Co., the evidence is at variance.   McKee testified that he owned, for the benefit of petitioner, 450 shares of Pana stock.   The stock certificate book shows that certificate No. 66 for 150 shares was issued to McKee on June 20, 1919, and was still outstanding at the close of the year. Stock certificate No. 1, made out to McKee prior to incorporation for 200 shares, the amount he originally subscribed for, is pasted to the stub.   It has written across its face, " Void," and the stub has written on it " Canceled, June 20, 1919."   These are the only two certificates of stock issued to him during the year 1919.   No stock was issued to the petitioner during the taxable year.   Unless we consider the issuance of the 150 shares to McKee on June 20, 1919, to reflect the net result of the resolution adopted by the subscribers on April 19, 1919, the stock book does not reflect the issuance of any stock in payment for the property taken over.   Neither does the stock book show that any stock was issued to McKee or to petitioner as collateral security for the payment of the property purchased by the Pana Co. from petitioner for $79,646.76.

There is no variance in the evidence as to the amount of stock owned by employees of the Pana Co. and by business men of Pana, from June 20 to the close of the taxable year, that is, 23 shares owned by 18 employees and 122 shares owned by 35 business men of Pana.

The evidence does not clearly show that the stock originally subscribed for and for which stock certificates Nos. 1, 2, 3, 4, and 5 were made out on April 12, 1919, was ever paid for and delivered, but assuming that it was, McKee held in the period between the Pana Co.'s organization in April, 1919, and June 20 of that year, only 200 shares out of 600 shares outstanding, or 33⅓ per cent, while during the period between June 20, 1919, and the end of the taxable year, he held only 150 shares out of 295 shares outstanding, or 50.8 per cent of the shares of the Pana Co.

It is true that there was an identity of interest in the two corporations.   They occupied the same factory and the same office, and had, in part, the same employees.   McKee himself made an arbitrary determination of the Pana Co.'s profits, and the Pana Co. was charged an arbitrary rental for its factory space.   There seems to

be little question that McKee controlled the business policy of the Pana Co. But the management of the business of the corporation is not the control required by the statute. It refers to stock control. *Island Petroleum Co.*, 17 B. T. A. 1; *Ice Service Co.* v. *Commissioner*, 30 Fed. (2d) 230; *Commissioner* v. *Hirsch & Co.*, 30 Fed. (2d) 645. "Control" as employed in the statute is a broader term than ownership. *Lavenstein Corporation* v. *Commissioner*, 25 Fed. (2d) 375; *Great Lakes Hotel Co.* v. *Commissioner*, 30 Fed. (2d) 1; *Commissioner* v. *Crescent Leather Co.*, 40 Fed. (2d) 833.

Applying then the criterion of stock control, we find that McKee owned only 50.8 per cent of the stock of the Pana Co. But petitioner contends that he controlled the remainder. We do not think the facts support this view.

The employee-stockholders held only 7.8 per cent of the Pana Co.'s outstanding stock. Most of the stock had been purchased on the installment basis and the shares were held by the company. The evidence is not clear whether McKee held and voted their proxies, and, if so, to what extent. McKee alone testified that he held proxies of the two classes of minority stockholders. These proxies were in any case only parol, and nowhere is the amount stated. Furthermore, we held in *Tunnel Railroad of St. Louis et al.*, 4 B. T. A. 596, that authorization to vote by proxy does not effect a separation of the voting power from the ownership of the stock; neither does it constitute a relinquishment by the stockholder of any right of ownership or control of its stock. There is no evidence, on the other hand, that the employee-stockholders obstructed or interfered in the management of the business. But mere acquiescence of minority stockholders does not mean necessarily that "control" of their stock is lodged in the hands of the majority stockholders. *News Publishing Co.* v. *Commissioner*, 29 Fed. (2d) 955.

As to the Pana business men who held 41.3 per cent of the Pana Co.'s stock, they stood in a somewhat different position. They purchased it under an agreement with McKee to receive a fixed rate of income on their investment and to resell to McKee at par value whenever they should wish to obtain their money. They did eventually redeem their stock under this rather loose and informal agreement. It does not appear that they ever agreed not to vote their stock against McKee. It is true, there is nothing to show any opposition to his control of business policy, but, as we have said, mere acquiescence is not enough. They were common and not preferred stockholders and so do not fall within the principle of *Atlantic City Electric Co.*, 15 B. T. A. 1084, 1089, which would permit the exclusion of preferred stockholders from our consideration of percentages of control where they can take no active hand in the corporation's affairs as stockholders. Nor is it clear to us that the interest held

by these stockholders was so unrelated to the money-making object of the corporation as to give their stock holdings the aspect merely of a pledge held to secure McKee's personal indebtedness, comparable to the situations set out in *Shillito Co.* v. *Commissioner*, 39 Fed. (2d) 830, and in *Pelican Ice Co.* v. *Commissioner*, 37 Fed. (2d) 285. Had the Pana Co. been successful, it might indeed have been very difficult for McKee to have persuaded these men that they were merely creditors for the sums lent and not in reality stockholders entitled to share in the profits of the enterprise.

In view of these facts, we reach the conclusion that the 122 shares owned by business men of Pana were not controlled by McKee and his interests.

Even if we should take the view most favorable to the petitioner, therefore, and assume that McKee did control the 23 shares held by the employees, we have only to decide whether the control of 58.6 per cent of the shares of the Pana Co. by McKee entitles the petitioner to affiliation with that company. The answer is obvious, that it does not. The statute says "substantially all," and 58.6 per cent falls far short of that definition. It has been repeatedly held that control by the dominant interests of the first corporation of no more than 75 per cent of the stock of the second corporation is insufficient to meet the requirements of the statute. *United States* v. *Cleveland, etc., R. R. Co.*, 42 Fed. (2d) 413; *Appeal of Goldstein Bros. Amusement Co.*, 3 B. T. A. 408; *Jos. Denunzio Fruit Co.*, 16 B. T. A. 1326; *Conley Tin Foil Corporation*, 17 B. T. A. 65; *D. J. & T. Sullivan*, 17 B. T. A. 1258.

Reviewed by the Board.

*Judgment will be entered for the respondent.*